Fidel Franco et al., Plaintiffs and Appellants, v. Inocencia Ramos, Defendant and Appellee.

No. 4477.   Argued June 27, 1928.—Decided November 13, 1928.

J. B. Soto and C. M. Pesquera for the appellants.   F. B. Fornaris for the appellee.

Mr. Justice Texidor delivered the opinion of the court.

On May 1, 1924, on San Francisco street, San Juan, P. R., the girl of a little over seven years of age called Derby Franco, or Derby Deya, daughter of plaintiff Guadalupe Lespier, attempted to cross that street and was struck by jitney No. P-958 belonging to the defendant and driven by chauffeur Carlos Pietrantoni. The girl received such injuries as fractures of the skull, arm and right leg and died shortly after the accident. This was the ground for the complaint filed by Fidel Franco and Guadalupe Lespier who alleged that they were the parents of the victim and that the accident was due to the negligence of the chauffeur of the jitney who carelessly drove it against the child.

The defendant in her answer denied the averments of the complaint and alleged as a special and separate defense that

the girl called Derby suddenly and unexpectedly had started to run from one sidewalk to the other and ran against the right rear mudguard of the jitney so that the chauffeur, who was driving in compliance with the traffic regulations and at a moderate speed, was unable to prevent the running girl from colliding with the jitney.

It is hard to follow the opinion of the lower court without being misled, for at times it may be believed from the cases cited that the judge considered that the plaintiffs were right and at others that the defendant was right. The case of *Ayers* v. *Ratshesky*, 213 Mass. 589, seems to be cited in favor of the theory of the plaintiffs, as in that case the court sustained a verdict in favor of the plaintiff. The case of *Routh* v. *Weakley*, 154 Pac. 218, in which it was said that in an action against the owner of an automobile which struck and killed a girl of eight years of age who suddenly left the sidewalk and crossed the street diagonally without looking ahead, contributory negligence on her part was not established as a matter of law by a conclusion that she knew that such conduct on her part was dangerous, is not a citation to justify a judgment like the one in this case.

Clearer and more convincing is the citation in the opinion of the case of *Marius* v. *The Motor Delivery Co.*, 146 App. Div. N. S. 608. It was held there that it was an error of the court to deny an instruction to the effect that if the boy ran from a place of safety to a place of danger very near the rear wheel of the truck there was no right to indemnity, and that a collision between a pedestrian and a motor car raised no presumption that the driver of the car was negligent. In the same opinion is laid down the doctrine juridically more logical as to the weighing of contributory negligence on the part of a minor based on the capacity, intelligence and physical condition of the minor, together with his capacity to apprehend danger.

The court below found that two of the witnesses for the defendant were not worthy of credit because of the contra-

dictions in their testimony. Indeed, if there was ever a case where not only the testimony of certain witnesses is at variance, but the whole evidence as well, it is this case. The district court found in favor of the contentions of the defendant on the doubts which arose from the evidence, and accordingly was the judgment rendered from which the plaintiffs have appealed.

The appellants assign five errors. Two of them assigned under Nos. I and IV refer to the weighing of the evidence; and that under No. V, which is too general, may have similar reference. They read as follows:

"1.—The court committed error in finding that it was impossible for the chauffeur of the jitney which caused the damage to foresee and avoid the accident.

"4.—The court committed error in finding that there was no proof that the speed of the jitney was excessive.

"5.—The court committed error in rendering judgment dismissing the complaint."

From the evidence as produced in the present case the conclusion reached by the court seems to be the most logical one. The fact shown by the evidence is that the girl, who was on one of the sidewalks of San Francisco street, started to run across the street to the other sidewalk just as the jitney was passing and collided with the right rear mudguard of the jitney and was struck by its rear wheel, receiving the blows which caused her death. To the trial court and as a matter of fact it was evident that the accident occurred in that way and consequently it is to be deduced that the chauffeur, who was in the front part of the vehicle and looking ahead could not see the child and thus avoid the accident. In such weighing of the evidence we see no manifest error to justify a reversal of the findings of the district judge, nor has he been accused of partiality, passion or prejudice. We follow the established jurisprudence of this court of respecting in cases of this nature the weighing of the evidence in the absence of any legal reason for holding otherwise.

There was no evidence that the speed of the jitney was excessive, as stated by the district court. We are of the opinion that its weighing of the evidence was sound and discreet. Perhaps it might be said that there was no evidence to authorize the trial judge to decide on the speed of the jitney; but the testimony of some of the witnesses and the contradictions of others were such that it was possible to reach that conclusion.

The second assignment of error reads as follows:

"2.—The court committed error in holding that the doctrine usually applicable to cases similar to this is that if a child occupying a place of safety leaves it and goes to a place of danger in front of a machine or vehicle there can be no recovery for the damages suffered in consequence of an accident."

We might ask in what position was the court placed by the parties for determining the capacity or intelligence of the victim of this accident and her conscious realization of danger and the means of avoiding it. We find in the evidence produced in the case nothing to show it in any sense. It is a very important element, for it can not be expected that a child of slow mental and even physical development should use the same care as an alert, agile and vigorous child, and the solution of very important problems may depend on the degree of that care. See the cases of *Marius* v. *The Motor Delivery Co.* and *Routh* v. *Weakley, supra,* as to the reason for affirming the judgment. Although the facts of the case are not exactly the same, application may be made here of what this court said in the case of *Meléndez* v. *Alvarez,* 35 P.R.R. 316, citing *De Jesús* v. *Ayende,* 32 P.R.R. 412, and *Lawrence* v. *Goodwill,* 44 Cal. App. 440, 186 Pac. 781.

When imminent danger arises suddenly and unexpectedly it is not possible to require human beings to overcome instantaneously the natural impression of fear or the disturbance in the functions of the brain which follows that impression and preserve the equilibrium which ordinarily should exist. That would be contrary to human nature.

Cases in which unexpected and sudden danger does not un-balance the person threatened by it are rare. Absolute control of the mind and its faculties at such a moment is unusual.

Evidently there are a great many authorities on both sides. Some of them hold that minors can not be guilty of contributory negligence and some that they can be in certain cases, according to the peculiar circumstances. The appellants cite 20 R.C.L. 127, and *United States Natural Gas Co.* v. *Talmadge Hicks*, noted in 23 L.R.A. 249, and the appellee cites a large number of cases, including *Eichman* v. *Bucheit*, 128 Wis. 385.

But there is no doubt that there is a presumption that a minor under fourteen years of age is not responsible generally for contributory negligence and that in order to establish such negligence on his part it would be necessary to prove that he had sufficient intelligence and discretion to realize the result of his acts. And there is a presumption that when he reaches fourteen years of age he can discriminate between good and evil, has discernment and is responsible for his acts.

As a rule the driver of a motor vehicle has the right to assume that a person who is in a place of safety will not leave his position suddenly and place himself in front of the vehicle.

If a child runs toward the side of a vehicle or runs from a place of safety to one of danger immediately in front of the vehicle, there can be no recovery for the resulting injuries.

The facts of the present case do not make out a case for the recovery of indemnity. The district court has given some idea of its appreciation of the facts in two paragraphs of the opinion as follows:

"It may be seen from the testimony of the witnesses that this was an unexpected and unfortunate accident which, though the driver of the jitney testified that he did not see the girl, could not be foreseen or avoided, for it appears from the testimony of the witnesses that

the girl was walking along the sidewalk of San Francisco street towards the east and the jitney was coming from Santurce; that suddenly the girl left the sidewalk and ran rapidly across the street and there was such imminent danger that according to the testimony of Corporal Casiano he shouted when he saw the girl running in that way and tried to catch her dress and stop her in a supreme effort to avoid the accident and that he only succeeded in grasping some shreds of the girl's dress. It appears moreover from the evidence that the girl did not strike the front part of the jitney, but the side of its right mudguard, the evidence being conflicting as to whether it was the front or the rear mudguard. But it clearly appears that the girl collided with the right side of the jitney and was thrown down, the rear wheel passing over her body.

"So it may be said that the sudden leaving of the sidewalk by the girl presents a situation of immediate danger, though the driver might have seen her, and then the matter at issue would have been whether the speed of the jitney was so great that nothwithstanding the contributory negligence of the girl, we might have found that the accident could have been avoided but for that circumstance. But such was not the case here, as the only evidence produced shows that the driver did not see the girl. He does not say that he did not see her, but says that he was not aware of her presence nor of the accident until he was told to stop because an accident had happened. The witnesses of the plaintiffs tell us that the girl ran against the side of the jitney. Under the circumstance we can not charge the chauffeur with a duty to see the girl and foresee what was going to happen at the side of his vehicle for he is bound only to look ahead."

With these facts it was impossible to find that the driver was negligent or that he was driving the jitney at a dangerous rate of speed. The legal doctrine to apply can be no other than that applied by the court, which did not commit the second error assigned.

The third error assigned by the appellants reads as follows:

"III.—The court committed error in holding that the jurisprudence laid down in Meléndez v. Alvarez by the Supreme Court of Porto Rico on April 27, 1926, is applicable."

We do not agree with the appellants. The court did not rely exclusively on the doctrine in *Meléndez* v. *Alvarez*, al-

though perhaps it might have done so by accepting its general principles, without thereby committing error.

The fifth assignment of error is exceedingly general and really includes the other assignments.

We find in this case something which seems not to have merited the attention of the parties but can not be overlooked by this court which, under section 1141 of the Statutes of Porto Rico, Comp. 1911, "may also take cognizance of all the facts and proceedings in the case as they appear in the record, and likewise consider the merits thereof, so as to promote justice and right and to prevent injustice and delay."

As appears from the record (pages 6, 7, 8, 9 and 10), Juan Deya appeared before the district court and moved for his substitution as a party plaintiff, alleging that Guadalupe Lespier, also plaintiff in this action, had been married to the movant and the issue of that marriage was the girl Derby Deya y Lespier, the victim of the accident which originated this suit; that the complaint was filed by Fidel Franco and Guadalupe Lespier who alleged that they were the lawful parents of the girl who was named in the pleadings as Derby Franco; that the movant was forced heir of the minor, and that he should be included in the litigation. He exhibited the certificates of his marriage to Guadalupe Lespier, of the birth of the child Derby Deya y Lespier recorded in the Civil Registry of Ponce as the legitimate daughter of Juan Deya and Guadalupe Lespier, and of the decree of divorce rendered by the District Court of Ponce in the civil case of Guadalupe Lespier v. Juan Deya, on November 14, 1918, placing the minor Derby Deya y Lespier under the care and *patria potestas* of the mother, Guadalupe Lespier.

It is stated by the district court in its opinion attached to the judgment that this motion was not notified to the parties and therefore no ruling on it was required.

It seems that Juan Deya, who in the motion calls himself forced heir of the victim, did not want to go farther and has taken no other action. But the documents exhibited with his

motion raise a question which should have been settled directly. The averment that the victim of the accident was the legitimate daughter of plaintiffs Fidel Franco and Guadalupe Lespier is destroyed by these documents. This question required a direct and final determination, for in litigation facts are facts and can not be disregarded no matter what the law may be.

This court is of the opinion that the complaint should not have contained the name of Fidel Franco as party plaintiff or any averment making reference to him. But in this document Guadalupe Lespier appears as the mother of the child Derby with *patria potestas* over her and she had a right to bring the action according to the law. This should have been said in deciding the case.

The assignments of error are without merit and therefore the judgment appealed from should be affirmed.