No. 41,717

JOE WEBER, Minor, by W. H. WEBER, his Father, Natural Guardian and Next Friend, *Plaintiff, Appellant,* v. MARION L. WILSON, *Defendant, Appellee.*

(356 P. 2d 659)

Opinion filed November 12, 1960.

*Champ Graham,* of Emporia, argued the cause, and *Wade A. Myers,* of Emporia, was with him on the briefs for appellant.

*Lacy C. Haynes,* of Emporia, argued the cause and was on the briefs for appellee.

The opinion of the court was delivered by

FATZER, J.: This was an action to recover for personal injuries resulting from an automobile collision with a bicycle ridden by a twelve-year-old boy.

At the trial the plaintiff presented evidence that he was struck and injured by the defendant's automobile when he rode his bicycle onto a black top county highway adjacent to the city of Emporia. At the close of the plaintiff's case the defendant interposed her demurrer upon the ground that the plaintiff's evidence failed to show any negligence on her part and that it established contributory negligence on the part of the plaintiff as a matter of law, which demurrer was overruled. The defendant did not stand on her de-

murrer but chose to introduce her evidence. At the conclusion of all the evidence the defendant moved the court to direct a verdict in her favor, which motion was sustained and the jury returned a verdict in favor of the defendant. The appeal is from the order sustaining the motion for a directed verdict and from the judgment rendered.

The appellant principally contends that the trial court erred when it sustained the defendant's motion for a directed verdict after it had overruled the defendant's demurrer to the plaintiff's evidence, and relies upon *Stout v. Bowers,* 97 Kan. 33, 154 P. 259; *Flentie v. Townsend,* 139 Kan. 82, 30 P. 2d 132, and *Rule v. Cheeseman, Executrix,* 181 Kan. 957, 317 P. 2d 472. The argument is made that the ruling on the demurrer to the evidence was an adjudication that the plaintiff had made a *prima facie* case to go to the jury and that the subsequent ruling on the motion for a directed verdict was incompatible. We doubt the soundness of the plaintiff's contention as stated, since in the course of a trial the court is privileged to change its ruling, and indeed it ought always to do so if or when, upon more reflection or in the further progress of the lawsuit, it discovers that its earlier ruling was incorrect (*Cox v. Kellogg's Sales Co.,* 150 Kan. 561, 95 P. 2d 531; *Eckl v. Brennan,* 150 Kan. 502, 95 P. 2d 535), however, we think this appeal is disposed of by the following:

At common law, a ruling on the demurrer to the evidence ended the litigation. If the demurrer was sustained, judgment was entered for the defendant; if it was overruled, the defendant was required to stand on the demurrer and judgment was entered for the plaintiff. Under Kansas practice a demurrer to the evidence is a recognized procedural act (G. S. 1949, 60-2909) and a motion for a directed verdict in favor of the defendant is essentially a demurrer to the plaintiff's evidence as now known in Kansas practice. (*Sullivan v. Phenix Ins. Co.,* 34 Kan. 170, Syl. ¶ 5, 8 P. 112; *Cott v. Baker,* 112 Kan. 115, 119, 210 P. 651.) While the defendant may elect to stand on his demurrer to the plaintiff's evidence, he also has the right instead to introduce evidence in support of his case. (*Bishop v. Huffman,* 177 Kan. 256, 278 P. 2d 588; *Ziegelasch v. Durr,* 183 Kan. 233, 326 P. 2d 295; *Ogilvie v. Mangels,* 183 Kan. 733, 332 P. 2d 581, and cases cited therein; *In re Estate of Rogers,* 184 Kan. 24, 334 P. 2d 830; *McCarthy v. Tetyak,* 184 Kan. 126, 334 P. 2d 379; *Anderson v. Thomas,* 184 Kan. 240, 336 P. 2d 821; *Rob-*

*erts v. Cooter*, 184 Kan. 805, 339 P. 2d 362; Vol. 8, Kansas Law Review, Survey of Kansas Law 1957-59, p. 212.)

In the instant case, the defendant elected not to stand on her demurrer but introduce evidence in her own behalf, and, having done so, it was necessary for her to renew her demurrer or move for a directed verdict at the close of all the evidence, otherwise she waived her right to contend the plaintiff's evidence was insufficient to warrant its submission to the jury. (*In re Estate of Rogers*, supra; *McCarthy v. Tetyak*, supra, p. 132; *Anderson v. Thomas*, supra, pp. 264, 265; *Roberts v. Cooter*, supra, p. 813.) Having moved for a directed verdict, the question whether the evidence was sufficient to warrant submitting the case to the jury is determined on the basis of all the evidence and not on the plaintiff's evidence alone. As in the case of a demurrer, in reviewing the propriety of an order sustaining a motion for a directed verdict, the appellate court is required to resolve all facts and inferences reasonably to be drawn from the testimony, in favor of the party against whom the ruling is sought. (*Ripper v. City of Canton*, 166 Kan. 185, 199 P. 2d 815; *Mathis v. Public School District No. 103*, 175 Kan. 453, 264 P. 2d 1082; *Bishop v. Huffman*, supra; *Rule v. Cheeseman, Executrix*, supra.) Thus, in the instant case, the supreme court is required to consider all of the plaintiff's evidence as true, giving it the most favorable inference, disregarding that unfavorable, and not weigh any difference between the direct and cross-examination, and, since the defendant's evidence may contain some probative facts which would aid in establishing the case for the plaintiff, to consider the defendant's evidence for that purpose, disregarding any conflicting or unfavorable evidence offered by her, and determine whether there was any evidence establishing a prima facie case of negligence on the part of the defendant as well as freedom from contributory negligence on the part of the plaintiff. (*Eckl v. Brennan*, 150 Kan. 502, 504, 95 P. 2d 535; *Bradley v. Allis Hotel Co.*, 153 Kan. 166, 173, 174, 176, 109 P. 2d 165.)

The question therefore is whether the testimony offered by the plaintiff and the favorable evidence produced by the defendant, if any, was sufficient to take the case to the jury. If the testimony fairly tended to prove the essential facts stated in the petition as to the defendant's negligence, although it may have been weak and inconclusive as compared with that produced by the defendant, the ruling on the motion to direct a verdict in favor of the defend-

ant cannot be upheld. This point was conclusively decided in the Stout, Flentie, and Rule cases, *supra*, relied upon by the plaintiff. In *Stout v. Bowers*, supra, the defendants' demurrer to the plaintiff's evidence was overruled and at the close of all the evidence their motion for a directed verdict was sustained. In the opinion Mr. Chief Justice Johnston said:

".  .  . If the demurrer to plaintiff's evidence could not be sustained a verdict against her could not be directed, because of conflicting evidence subsequently produced in behalf of the defendants. Her case might have been strengthened by the testimony offered in their behalf, but on the motion to direct a verdict the *prima facie* case made by her testimony could not be weakened or destroyed by theirs.  .  .  ." (l. c. 36.)

Whether the trial court erred in sustaining the defendant's motion for a directed verdict depends upon two questions: whether there was any evidence of negligence in the manner the defendant operated her automobile prior to and at the time the plaintiff was injured, and whether contributory negligence may be imputed as a matter of law to a twelve-year-old boy riding a bicycle, under the circumstances presented by the record.

The collision in question occurred on May 21, 1958, between 5:00 and 6:00 o'clock p. m. at the intersection of Fifteenth Street and Prairie Avenue, a residential area. Prairie Avenue is a north-south black top county highway; Fifteenth Street east of Prairie Avenue is a black top surfaced road, and west of Prairie Avenue it is an eight or nine foot county highway, referred to by all the witnesses as a lane or driveway (driveway), used by residents west of Prairie Avenue as a driveway to reach their homes. Prior to the time the driveway became a part of the county system in 1952 it had been graveled by the township, but since that time it has remained unimproved. At the intersection in question, the vision of those traveling south on Prairie Avenue and east on the driveway is completely obstructed by a dense hedgerow ten or twelve feet high commencing three or four feet north of the driveway and growing five or six feet in from the west side of the right of way of Prairie Avenue, extending north approximately one block. Complementing that dangerous situation, there were no stop signs.

The plaintiff was a boy twelve years of age and had ridden a bicycle for two or three years. He had a weekly newspaper route and one of his customers lived on the north side of the driveway about a block west of Prairie Avenue. After delivering a newspaper to that residence he rode his bicycle down the driveway and as he

came onto Prairie Avenue he was struck by the defendant's automobile traveling south on Prairie Avenue. The point of impact was west of the center line of Prairie Avenue and just north of the center line of Fifteenth Street. The boy was thrown through the air some twenty feet and after hitting the ground he rolled about fifteen feet.

The plaintiff testified that he did not stop before entering Prairie Avenue but coasted onto it at about five miles an hour; that he did not look to the north to see if any cars were coming and did not see the defendant's automobile; that he did not have good brakes on his bicycle, and the only way he could stop was to drag his feet. He further testified that after the collision various people talked to him, one being the defendant, and that he told her the collision was his fault.

C. V. Carle, sheriff of Lyon County, was called to the scene of the accident and took measurements of skid and other marks and testified that skid marks on Prairie Avenue made by the defendant's automobile commenced 52 feet south of the intersection and continued for a distance of 34 feet. He further testified that the bicycle "was all torn to pieces," and that there was a dent on the left front fender and a small dent on the left front grill hood of defendant's car and he estimated the damage to be $25. He stated that on the basis of his measurements and from charts in his possession he estimated the speed of the defendant just before the impact at somewhere between 20 and 50 miles per hour.

Justin Love testified he was proceeding north on Prairie Avenue and the only traffic he observed was a car following him and the defendant's car coming from the north; that he saw the boy coming from the west and could foresee trouble, or at least a close meeting of the defendant's car and the bicycle; that he slowed his automobile and applied his brakes; that he observed the impact, and the front part of the defendant's car struck the boy and "he arched toward my side of the road"; that from his observation the defendant did not apply her brakes until after the point of impact. He further testified that he observed the boy after the collision and he had a broken leg and "he was in quite a state of shock."

Lester Stone, the driver of the car following Love, testified he was 200 or 250 feet south of the point of impact; that he saw the defendant's car strike the boy's bicycle "right at the intersection of Fifteenth and Prairie"; that the boy was just coasting down

toward the intersection about five miles an hour; that the defendant's automobile was going 30 to 35 miles an hour; that the defendant did not apply her brakes until after she struck the boy, and that he talked with the defendant after the collision and she said "she never saw him until she struck him."

The defendant testified that she had driven a car about 25 years and had been over the road many times and was familiar with it; that she knew there was a road going west and was familiar with it only as a driveway to the various houses, and that she did not look to the west before the impact but was looking straight ahead—cars were coming toward her.

Whether a defendant is guilty of actionable negligence is ordinarily a question of fact for the jury, it being left to it under proper instructions whether the defendant acted with reasonable care under the particular circumstances of the case. It is only where the evidence is so clear that the minds of reasonable prudent persons could arrive at only one conclusion that a trial court is permitted to declare whether the defendant was negligent. Sincere and impartial persons of equal intelligence frequently draw different conclusions as to negligence from the same identical facts. Where it is possible such persons may so differ, the law commits the decision to the jury on the theory it may resolve the differences and reach a unanimous decision (*Bishop v. Huffman,* supra).

The evidence favorable to the plaintiff in this case has been set forth and further comment concerning it will not be made. Accepting it as true and giving it all favorable inferences fairly deducible and all presumptions fairly arising therefrom, we think it must be said that reasonable minds in the exercise of fair and impartial judgment might reach different conclusions as to whether the defendant exercised due care and whether her lack thereof was the proximate cause of the plaintiff's injury. The result is that under the facts and circumstances presented, we think the evidence of the plaintiff, together with the favorable evidence of the defendant, was sufficient to warrant the submission of the plaintiff's case to the jury.

The remaining question is whether the plaintiff's conduct and his lack of care barred recovery. Can it be said as a matter of law he was guilty of contributory negligence? If the plaintiff were an adult we might perhaps answer the question in the affirmative, but the injured party was not an adult—he was a twelve-year-old boy.

Conceding that the facts in evidence tended to show negligence on his part, we cannot say that such negligence was conclusively established as a matter of law. The rule of law with respect to the negligence of an adult and that of a child of tender years is quite different. Children of tender years are not held to the same strict accountability of an appreciation of danger and of need for care of themselves as persons of full age, but are required to exercise such care as persons of their age, experience, capacity and intelligence are ordinarily expected to exercise under like circumstances. (*K. P. Rly. Co. v. Whipple,* 39 Kan. 531, 18 P. 730; *Railway Co. v. Carlson,* 58 Kan. 62, 66, 67, 48 P. 635; *Railway Co. v. Potter,* 60 Kan. 808, 58 P. 471; *Seifert v. Schaible,* 81 Kan. 323, 105 P. 529; *Greef Bros. v. Brown,* 7 Kan. App. 394, 51 P. 926; *Ratcliffe v. Speith,* 95 Kan. 823, 828, 149 P. 740; *Scott v. Fair Association,* 102 Kan. 653, 655, 171 P. 634; *Bellamy v. Railways Co.,* 108 Kan. 708, 196 P. 1104.) While courts cannot say that children between nine and thirteen years of age are incapable of exercising any care and are relieved from the application of the doctrine of contributory negligence merely because of age, it has been held that there is no precise age at which a child may be said, as a matter of law, to have acquired such knowledge and discretion as to be held accountable for all his actions to the same extent as one of full age, and the question of capacity of a particular child at a particular time in avoiding a particular danger is one of fact, falling within the province of a jury to determine. (*Railway Co. v. Carlson,* supra, pp. 66, 67.)

Under the circumstances disclosed by the record, we cannot say that the plaintiff was guilty of contributory negligence as a matter of law as would bar his recovery (*Scott v. Fair Association,* supra), the question being one of fact for the jury under proper instructions by the court. In *Ratcliffe v. Speith,* supra, this court said:

"Whether . . . the plaintiff, who was over thirteen years old and who started across the street without looking for or observing the approach of the automobile, which was coming at a moderate rate of speed, was guilty of contributory negligence, were questions for the determination of a jury." (Syl. ¶ 2.)

See, also, annotation 107 A. L. R. 26, Contributory Negligence of Children.

As this case comes to us, whether the defendant operated her automobile in a negligent manner resulting in the plaintiff's injury and whether the boy exercised the care and caution required of him

peculiarly are questions for the determination of a jury, and, having reached this conclusion, we are compelled to say the trial court erred in sustaining the motion for a directed verdict for the defendant after it had overruled the defendant's demurrer to the plaintiff's evidence, and that the ruling cannot be upheld.

The judgment is therefore reversed and the cause remanded for a new trial. It is so ordered.